# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

ROYCE BUSSEY, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

DIGITALGLOBE, INC.,
GENERAL HOWELL M. ESTES III,
NICK S. CYPRUS,
ROXANNE DECYK,
LAWRENCE A. HOUGH,
WARREN C. JENSON,
L. ROGER MASON, JR.,
JEFFREY R. TARR,
KIMBERLY TILL,
EDDY ZERVIGON,

    Defendants.

## COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND JURY DEMAND

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on February 24, 2017 (the "Proposed Transaction"), pursuant to which DigitalGlobe, Inc. ("DigitalGlobe" or the "Company") will be acquired by MacDonald, Dettwiler and Associates Ltd. ("Parent"), SSL MDA Holdings, Inc. ("SSA MDA"), and Merlin Merger Sub, Inc. ("Merger Sub," and together with Parent and SSL MDA, "MacDonald").

2. On February 24, 2017, the DigitalGlobe Board of Directors caused DigitalGlobe to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, MacDonald will acquire all of the outstanding shares of DigitalGlobe common stock for $17.50 in cash and 0.3132 shares of Parent common stock for each share of DigitalGlobe common stock (the "Proposed Transaction"). As of the date of the announcement, the Proposed Transaction was valued at approximately $35 per share, or $2.4 billion.

3. On April 27, 2017, the defendants issued materially incomplete and misleading disclosures in the Form F-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of DigitalGlobe common stock.

9. Defendant DigitalGlobe is a Delaware corporation and maintains its principal executive offices at 1300 West 120th Avenue, Westminster, Colorado, 80234. DigitalGlobe is a leading global provider of high-resolution Earth imagery, data, and analysis. DigitalGlobe's common stock is traded on the New York Stock Exchange under the ticker symbol "DGI."

10. Defendant General Howell M. Estes III ("Estes") has served as a director of DigitalGlobe since 2007 and as Chairman of the Board since February 2011.

11. Defendant Nick S. Cyprus ("Cyprus") has served as a director of DigitalGlobe since June 2009.

12. Defendant Roxanne Decyk ("Decyk") has served as a director of DigitalGlobe since July 2014.

13. Defendant Lawrence A. Hough ("Hough") has served as a director of DigitalGlobe since January 2013.

14. Defendant Warren C. Jenson ("Jenson") has served as a director of DigitalGlobe since 2008.

15. Defendant L. Roger Mason, Jr. ("Mason") has served as a director of DigitalGlobe since October 2015.

16. Defendant Jeffrey R. Tarr ("Tarr") has served as a director of DigitalGlobe since April 2011 and is the Company's President and Chief Executive Officer ("CEO").

17. Defendant Kimberly Till ("Till") has served as a director of DigitalGlobe since October 2010.

18. Defendant Eddy Zervigon ("Zervigon") has served as a director of DigitalGlobe since March 2014.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants" or the "Board."

20. Non-party Parent is a corporation organized under the laws of British Columbia and a party to the Merger Agreement. Parent maintains its corporate headquarters 1570-200 Burrard Street, Vancouver, British Columbia, V6C 3L6.

21. Non-party SSL MDA is a Delaware corporation and a wholly-owned subsidiary of Parent. SSL MDA is a party to the Merger Agreement.

22. Non-Party Merger Sub is a Delaware corporation and a wholly-owned subsidiary of SSL MDA. Merger Sub is a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of DigitalGlobe (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of February 22, 2017, there were approximately 61,755,437 shares of DigitalGlobe common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

30. DigitalGlobe offers high-resolution imagery data and analysis through a constellation of satellites in Earth's orbit.

31.     The Company provides imagery solutions and other services to customers for a wide variety of uses, including mission-planning, mapping and analysis, environmental monitoring, oil and gas exploration, and infrastructure management.

32.     Additionally, DigitalGlobe's Geospatial Big Data platform provides developers with tools for new applications and machine learning algorithms.

33.     On February 24, 2017, the Company issued a press release reporting the financial results for 4th quarter 2016 and fiscal year 2016.  U.S. Government revenue increased by 3.3% in 2016, Diversified Commercial revenue increased by 3.3%, and net income increased 13.7% to $26.5 million, or $0.34 per diluted share. Additionally, net income margin expanded 40 bps to 3.7%; adjusted EBITDA increased 7.6% to $382.7 million; and adjusted EBITDA margin expanded 220 bps to 52.8%. With respect to the financial results, Individual Defendant Tarr commented:

> We wrapped up a solid year on a high note with our successful launch of WorldView-4 and the completion of the Radiant Group transaction[.] Our improved results reflect solid execution against our strategy for shareowner value creation and position us well for 2017. We look forward to continued profitable growth as we expand our International Defense and Intelligence business with assured access to our newest high resolution satellite, develop new commercial use cases, expand our rapidly growing geospatial big data analytics platform, and realize the full potential of our services business with the addition of Radiant.

*The Process Leading Up to the Merger Agreement*

34.     The Board of DigitalGlobe had made a substantial attempt to sell part or all of its assets beginning in October 2015.  After an unsuccessful effort, the Company's Board determined to move forward as a standalone company.

35.     A year later, on October 20, 2016, MDA's President and Chief Executive Officer Howard L. Lance contacted Defendant Tarr to gauge interest in a potential combination.

36. Shortly after this contact, the Company contacted PJT Partners LP to advise the Board in consideration of any potential mergers.

37. The Board met on October 20, 2016 and authorized negotiations to move forward with MDA. The Board also approved the engagement of PJT Partners at that time.

38. Over the next several months, the Company negotiated with MDA, and reached out to five other potential strategic acquirers and investors. Ultimately, none of the other potential transaction partners delivered an indication of interest to acquire or invest in the Company.

39. On December 6, 2016, after identifying potential strategic partners, the Board created a transactions committee of Defendants Zervigon, Cyprus, and Hough to assist in the review of strategic alternatives to the Company's standalone plan.

40. On January 26, 2017, the Board determined to engage Barclays Capital, Inc. as an additional financial advisor because "Barclays would be well-suited to advise on MDA's business."

41. The Company continued negotiations with MDA and the other potential strategic parties throughout December, January, and February.

42. After negotiation and finalization of the Merger Agreement, the Board met on February 23, 2017 to discuss the Proposed Transaction. PJT Partners and Barclays provided their oral fairness opinions to the Board.

43. Following these discussions, the Board approved the Proposed Transaction and unanimously authorized the execution of the Merger Agreement.

44. Early the next morning, MDA and the Company entered into the Merger Agreement and other transaction documents.

45. The two companies then issued a joint press release, reading in relevant part:

SAN FRANCISCO and WESTMINSTER, Colo. — February 24, 2017 — MacDonald, Dettwiler and Associates Ltd. ("MDA") (TSX: MDA), a global communications and information company providing technology solutions to commercial and government organizations worldwide, and DigitalGlobe, Inc. ("DigitalGlobe") (NYSE: DGI), the global leader in Earth imagery and information about our changing planet, today announced they have entered into a definitive merger agreement, pursuant to which MDA will acquire DigitalGlobe for US$35.00 per share in a combination of cash and stock. The transaction values DigitalGlobe at an equity value of approximately C$3.1 billion (US$2.4 billion), and an enterprise value of C$4.7 billion (US$3.6 billion), including assumption of DigitalGlobe's C$1.6 billion (US$1.2 billion) in net debt. The transaction has been unanimously approved by the boards of directors of both companies, and is expected to close in the second half of 2017.

Under the terms of the agreement, each DigitalGlobe common share will be exchanged for US$17.50 in cash and 0.3132 MDA common shares, representing a per share value of US$17.50 based on MDA's unaffected closing share price of C$73.40 on the Toronto Stock Exchange (TSX) on February 16, 2017, the day prior to market speculation about a potential combination, and a C$/US$ exchange ratio of 0.7612. The total cash and stock per share value consideration represents an 18% premium based on DigitalGlobe's unaffected closing stock price on the New York Stock Exchange (NYSE) on February 16, 2017.

The combination will bring together complementary space-related capabilities, creating a stronger company uniquely positioned to capture growth in the U.S., Canadian and global Earth observation and geospatial services markets given its ability to provide complete, end-to-end space systems, earth imagery and geospatial solutions. Together, the combination will leverage a full suite of space-related capabilities, including communications and Earth observation satellites and robotics, ground stations, integrated electro-optical and radar imagery, and advanced data analytics. Additionally, the combined company will lead in cloud-based information services that allow commercial and government customers worldwide to better understand activity across the changing planet.

As part of the transaction, MDA will apply to list its shares on the NYSE in addition to the TSX. Upon completion of the transaction, the combined Company will continue to execute its U.S. Access Plan strategy. This will include further reorganization of all or part of the combined Company's corporate and operating structure to ensure that the ultimate parent of DigitalGlobe is incorporated in the U.S. by the end of 2019, subject to customary approvals. MDA undertook a corporate reorganization in 2016 that

included the formation of SSL MDA Holdings, Inc. ("SSL MDA Holdings"), the U.S. Operating Company of MDA, under the guidance and approval of the U.S. Department of Defense (DoD). SSL MDA Holdings currently operates under a Security Control Agreement (SCA) with DoD, allowing it to pursue and execute U.S. Government programs that require security clearances.

"Today's announcement creates a new company that will lead the industry, offering space systems and imaging solutions from inception to execution, able to make design decisions with our customer's needs in mind," said Howard L. Lance, president and chief executive officer of MDA. "This combination has the scale, resources and technology to serve the large and increasingly complex needs of government and commercial customers globally. By combining MDA and DigitalGlobe, we are significantly expanding our total addressable market by broadening both companies' capabilities and facilitating future growth."

Lance continued, "MDA remains fully committed to its enduring and valued partnership with the Canadian Government and our Canadian employees. This combination offers the opportunity to deliver future economic and job growth in both Canada and the United States, as we focus on driving sustainable revenue expansion from our investments and create value for all our stakeholders."

Lance further stated, "The transaction is a major step forward in our previously announced U.S. Access Plan. We are committed to serving the U.S. Government as a mission-critical partner with an expanded portfolio of end-to-end solutions. DigitalGlobe will operate as a stand-alone division under SSL MDA Holdings, in the same way as SSL and MDA's Canadian businesses."

Jeffrey R. Tarr, president and chief executive officer of DigitalGlobe, said, "Following a thorough review of strategic alternatives, we believe that joining forces with MDA will enable us to deliver more value to our customers, expand opportunities for our team members and maximize value for shareowners. This compelling transaction will deliver immediate cash value to shareowners with further upside through ownership in the combined entity, position DigitalGlobe to reach its next phase of growth and provide greater opportunities for our team members by being part of a larger, more diversified company."

Tarr continued, "Upon completing the transaction, DigitalGlobe will accelerate our vision of being the leading source of information about our changing planet. We look forward to working with the MDA team to ensure a seamless transition and to realize the potential of this exciting combination."

46. The transaction, which has been unanimously approved by the boards of directors

9

of both companies, is subject to customary closing conditions, including approval by the stockholders of DigitalGlobe Bay, and is expected to close in the second half of 2017.

*The Materially Misleading Registration Statement*

47. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction. As alleged below and elsewhere herein, the Registration Statement omits material information that must be disclosed to DigitalGlobe stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

48. The Registration Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of DigitalGlobe's financial advisors. This omitted information, if disclosed, would significantly alter the total mix of information available to DigitalGlobe's stockholders.

*Misleading Statements and Omissions Regarding the MacDonald's Financial Projections*

49. The Registration Statement discloses that PJT Partners relied upon DigitalGlobe's projections of management's financial projections. However, the Registration Statement omits important line items from these forecasts: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) changes in net working capital; (v) deferred contract costs and other operating activities (vi) other cash flow and deferred items; (vii) the net operating loss projections included in the "Scenario 2," and "Scenario 3" projections; and (viii) a reconciliation of all non-GAAP to GAAP metrics for years 2018 through 2021.

50. The Registration Statement discloses that PJT Partners relied upon DigitalGlobe's projections of MDA's financial future in its analyses. For example, PJT Partners utilized "MDA's projected aftertax unlevered free cash flows for fiscal years 2017E through 2021E based on the DigitalGlobe Revised MDA Forecasts" in performing its *Discounted Cash Flow Analysis-MDA*.

51.     DigitalGlobe's other financial advisor, Barclays, also used these projections. In its *Discounted Cash Flow Analysis-DigitalGlobe*, Barclays used "MDA's projected aftertax unlevered free cash flows for fiscal years 2017E through 2021E based on the MDA Forecasts and the DigitalGlobe Revised MDA Forecasts."

52.     However, the Registration Statement omits important line items from these forecasts. With respect to MacDonald's financial projections, the Registration Statement fails to disclose: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) stock based compensation; (v) taxes; (vi) enterprise improvement costs; (vii) foreign exchange loss; (viii) executive termination settlement costs; (ix) income tax expenses; (x) changes in working capital; and (xi) other cash flow items.

*Misleading Statements and Omissions Regarding the Financial Analysis of PJT Partners and Barclays*

53.     With respect to PJT Partners' Discounted Cash Flow Analysis for DigitalGlobe, the Registration Statement fails to disclose: (i) the effect of DigitalGlobe's interest on taxes paid; (ii) the ranges of terminal values of DigitalGlobe as of December 31, 2021; and (iii) PJT Partners' basis for applying perpetuity growth rates of 1.5% to 2.5%.

54.     With respect to PJT Partners' Discounted Cash Flow Analysis for MacDonald, the Registration Statement fails to disclose: (i) the effect of MacDonald's interest on taxes paid; (ii) the ranges of terminal values of MacDonald as of December 31, 2021; and (iii) the estimated net debt as of December 31, 2016.

55.     With respect to PJT Partners' Discounted Equity Value Analysis for DigitalGlobe, the Registration Statement fails to disclose: (i) the estimated net debt as of December 31, 2020; and (ii) the fully diluted number of shares of DigitalGlobe common stock estimated to be outstanding as of December 31, 2020.

56. With respect to PJT Partners' Discounted Equity Value Analysis for MacDonald, the Registration Statement fails to disclose: (i) the estimated net debt; and (ii) the fully diluted number of shares of MacDonald common shares estimated to be outstanding as of December 31, 2020.

57. With respect to PJT Partners' Selected Comparable Company Analyses for DigitalGlobe and MacDonald, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed in the analyses.

58. With respect to Barclays' Discounted Cash Flow Analysis for DigitalGlobe, the Registration Statement fails to disclose: (i) the ranges of terminal values of DigitalGlobe as of December 31, 2021; (ii) Barclays' basis for applying perpetuity growth rates of 1.5% to 2.5%; (iii) the estimated net debt as of December 31, 2016; and (iv) the net operating loss projections included in the "Scenario 1" projections.

59. With respect to Barclays' Discounted Cash Flow Analysis for MacDonald, the Registration Statement fails to disclose: (i) the ranges of terminal values of MacDonald as of December 31, 2021; and (ii) the estimated net debt as of December 31, 2016.

60. With respect to Barclays' Selected Comparable Company Analyses for DigitalGlobe and MacDonald, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed in the analyses.

61. With respect to Barclays' Selected Precedent Transaction Analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed in the analysis.

62. These omissions of material fact represent selective disclosures made by Defendants in the Registration Statement that significantly alter the total mix of information that

Defendants used to market the Proposed Transaction. Defendants misled investors into believing the Proposed Transaction is fair while refusing to disclose the full picture provided to the board of DigitalGlobe by its financial advisors.

*Communications Relating to Post-Transaction Employment And/Or Directorships*

63. The Proxy is rendered materially misleading by the omission of material information concerning the timing, content, and nature of communications regarding the future employment and/or directorships of DigitalGlobe's directors and officers, and therefore the potential conflicts of interest faced by those individuals during the process leading up to the Merger Agreement.

64. Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future directorship and/or employment of DigitalGlobe's directors and officers, including who participated in all such communications, when they occurred during the merger process, and their content. This includes, but is not limited to, those communications relating to Individual Defendants Estes', Mason's, and Cyprus's future board and committee positions.

65. The failure to disclose the content and timing of such discussions materially misleads Delta's stockholders as to the objective nature of the process leading up to the Proposed Transaction, and the potential conflicts of interest faced by Company management in supporting the merger.

66. The omitted information concerning the timing, content, and parties involved in these communications concerning the retention of Delta's management and Board would significantly alter the total mix of information that Defendants used to promote the Proposed Transaction, because the conflicts of interests created and fostered by such communications

13

would affect the stockholders' perception and analysis of the entire process and the ultimate fairness of the Proposed Transaction. Thus the statements in the Proxy, including but not limited to the statements concerning the Board's role in the negotiations, are rendered materially misleading by these omissions.

*Potential Conflict of Interest Facing PJT Partners and Barclays*

67. The Proxy is rendered materially misleading by the omission of material information concerning the potential conflicts of interest faced by PJT Partners and Barclays in acting as the Company's financial advisors.

68. For example, the Registration Statement fails to disclose: (i) whether PJT Partners has previously provided services to MacDonald and/or its affiliates, and the amount of compensation received for such services; (ii) the amount of compensation received by Barclays for the past services it provided to DigitalGlobe; and (iii) whether Barclays has previously provided services to MacDonald and/or its affiliates, and the amount of compensation received for such services.

69. The Registration Statement further fails to disclose whether the estimated compensation of $36 million and $18 million payable to PJT Partners and Barclays, respectively, is contingent upon consummation of the Proposed Transaction.

70. Additionally, the Registration Statement fails to disclose the Board's "other reasons for engaging Barclays" as a second financial advisor, including whether such reasons included any potential or perceived conflict of interest on the part of PJT Partners.

71. These omissions directly implicate the independence of the financial advisors and materially mislead DigitalGlobe stockholders as to the ability of the financial advisors to act in the best interest of DigitalGlobe and its stockholders when providing financial advice leading up

14

to the Proposed Transaction. For example, by omitting the previous engagements of the financial advisors, the Registration Statement permits the inference that the financial advisors have not performed any services for MacDonald without any affirmative statement regarding potential services.

72.     The statements in the Registration Statement are misleading because they provide shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, rendering it unfair to Plaintiff and other members of the class. Without this omitted information, DigitalGlobe shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants

73.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. DigitalGlove is liable as the issuer of these statements.

75.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

76. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

77. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

78. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

79. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

80. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Company

81. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82. The Individual Defendants and the Company acted as controlling persons of the Company within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of DigitalGlobe and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

83. Each of the Individual Defendants and the Company was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

84. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

85. By virtue of the foregoing, the Individual Defendants and the Company violated Section 20(a) of the 1934 Act.

86. As set forth above, the Individual Defendants and the Company had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

      B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

      C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 10, 2017

Respectfully submitted,

**WEISSLAW LLP**

By: */s/ Richard A. Acocelli*

**OF COUNSEL:**

Richard A. Acocelli
1500 Broadway, 16th Floor

**LEVI & KORSINSKY, LLP**
Donald J. Enright
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Email: denright@zlk.com

New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Liaison Counsel for Plaintiff*

*Attorneys for Plaintiff*